The court now calls case number 118123, People of the State of Illinois v. McLean-Sanders. Are the parties ready to proceed? Good morning. I'm Stephen Gentry from the Office of the State Appellate Defender on behalf of McLean-Sanders, the appellant. McLean-Sanders' successive post-conviction petition should not have been dismissed without an evidentiary hearing because it made a substantial showing with two pieces of newly discovered evidence of his actual innocence of the murder and kidnapping at issue in this case. At trial, only two of the state's witnesses identified Mr. Sanders as being involved in the kidnapping, and only one of those witnesses identified him as the perpetrator of the murder. In Mr. Sanders' new successive petition, he presents the recantation testimony of the key state's witness, Gary Bingham, discovered from co-defendant Aaron May's post-conviction proceedings, in which Mr. Bingham takes full responsibility for committing the kidnapping and murder in this case and completely exonerates Mr. Sanders. Also included in Mr. Sanders' petition is the affidavit of a brand-new witness, Tricia DeRamos, who was also present that night, who also witnessed Bingham alone commit the kidnapping, returned to the premises later, admit to committing the murder, and threatening those present to maintain their silence. The trial court denied Mr. Sanders an evidentiary hearing on these two pieces of newly discovered evidence on the basis that in co-defendant Aaron May's post-conviction proceedings, the recantation of Gary Bingham was found to not be credible. The court also found that Tricia DeRamos' affidavit, insofar as it said the same thing as Bingham's testimony, did not need to be considered, again, because Bingham's testimony was found to not be credible in these other proceedings. It was wrong to deny Mr. Sanders an evidentiary hearing for three reasons. Number one, at the procedural stage where this petition was dismissed, where the state had filed a motion to dismiss, credibility determinations were improper. The state, by filing a motion to dismiss, essentially admitted the facts, and the question before the court was, do the facts alleged in the petition, taken as true at that stage, make a substantial showing of actual innocence? It was thus improper for the court to base its denial, its dismissal, on this credibility determination. Second, it was improper for the trial court to dismiss without an evidentiary hearing, because in adopting these credibility findings from Aaron May's case, it violated the mutuality requirement of collateral estoppel. It is the law in Illinois and around the country that findings from other proceedings are not adopted in a case unless there is mutuality of the parties. There's the fact that the defendant asked the court, it was part of their newly discovered evidence, was testimony from May's post-conviction, right? That is correct. I mean, it wasn't that the court just decided to consider what had happened in another hearing. They were asked, part of the basis was, well, this happened in another hearing. There's no question that Sanders discovered this recantation through those proceedings and that in those proceedings the testimony was not found to be credible. However, So is the court not supposed to just turn a blind eye to that? Is there an element of trying to have it both ways? Well, I'm not sure about having it both ways. The question at the second stage is not whether the testimony being brought forth is credible or not. The question is, taking that as true, does it make a substantial showing? So it is not until the evidentiary stage at which credibility determinations can be made. But here, where Mr. Sanders was not represented in Aaron May's proceedings, it was improper for those to be brought in, even if credibility considerations were proper at that stage. And that's even where it was the same judge in both cases? Absolutely. Making that determination? I'm sorry. Yes, Your Honor. I'm sorry. The reason for the mutuality requirement for collateral estoppel is illustrated by the factors present in the instant case. Certainly in any case, one might speculate that an attorney for a different party might be able to more effectively examine a witness than the other attorney did. But in this case, it goes beyond speculation. The record shows us that Mr. Sanders, given an opportunity to make his own examination of this evidence, could make a much stronger case than was made in Aaron May's post-conviction proceedings. First of all, the evidence against Aaron May was considerably stronger than that against McLean Sanders. As I mentioned earlier, there were only two witnesses, both of them co-defendants, who identified Sanders as being involved. Aaron May, in addition to those two witnesses, was identified by a third witness at trial, Cheryl Lathan. And in addition to that, Aaron May admitted in the post-conviction proceedings to being present at the scene of these offenses. In contrast, McLean Sanders denied his involvement at trial. He also presented two alibi witnesses at trial. In addition to the difference in the strength of the evidence against Aaron May and against McLean Sanders, McLean Sanders also, in addition to the recantation testimony of Key States witness Bingham, also presented a brand-new witness, Patricia DeRamos. Her affidavit completely corroborates not only McLean Sanders' testimony at trial and the testimony of his two alibi witnesses who say he was not there, but it also presents a separate piece of newly discovered evidence, which is the third reason why the trial court was in error in dismissing him on this basis. Patricia DeRamos, in her affidavit, corroborates the recantation testimony and also indicates that she was an eyewitness as well. She indicates that she was the witness referred to at trial as Dee Dee, but there was no way for McLean Sanders to know that Dee Dee was Patricia DeRamos. And in her affidavit, she indicates that she was afraid to come forward until she did in this incident case. What is it, counsel, about the recantation in DeRamos' affidavit that could not have been discovered earlier through due diligence? Well, in DeRamos' affidavit, she indicates that she was afraid to come forward, and additionally, he did not know her name, had no way of discovering her name. Simply, the letters Dee Dee did not provide him with information to even identify who she was. And even if he had been able to identify who she was, her affidavit, which must be taken as true at this point in the proceedings, indicates that she was not going to come forward due to fear after having been threatened by Bingham when he returned to the scene. Similarly, as to Bingham's recantation testimony, McLean Sanders simply was not aware of it until he obtained the transcripts after the testimony was given. The state indicates that McLean Sanders knew of Gary Bingham, but that's not the same as knowing that he was willing to provide recantation testimony, completely exonerating him. As it now stands, there are more than twice as many witnesses who say that McLean Sanders was not involved in this offense than ever said that he was involved. Unless this court has further questions for these reasons and those stated in the briefs, McLean Sanders requests that this court remand this case for an evidentiary hearing on his two new pieces of evidence of his actual innocence. Thank you. Good morning, Your Honors. May it please the Court. My name is Michelle Grimaldi Stein, and I am an Assistant State's Attorney. I represent the people of the state of Illinois. The Post-Conviction Hearing Act is not a proverbial chess game in which a defendant can obtain a tactical advantage through clever strategy and deliberate legal maneuvering and box a court into having to have an evidentiary hearing on evidence that it had already considered and rejected. Yet that is exactly how the defendant is asking this court to interpret the act today. In seeking disfavored successive post-conviction proceedings, the defendant attached very selected excerpts from Gary Bingham's recantation testimony, which the defendant knew had been presented in an identical collateral challenge by his co-defendant and rejected as incredible in those proceedings. But the defendant insisted that the court could not consider anything about those other proceedings other than the excerpts that he deliberately tailored to suit his purpose, going so far as to omit single pages of that testimony where the answers to questions about McClain-Sanders' involvement in the drug dealings were to be found. Did the state, in their motion to dismiss, bring forward those contradictions? In terms of the, did they present the rest of the testimony? No, Your Honor, they did not present the rest of the testimony, but they indicated and the court recalled that it had had a hearing. So then rather than, in the motion to dismiss, bringing forward contradictory evidence, the state's only argument was, Judge, you heard this case with the other defendant and you found him incredible. That was the position of the state? That was one of the positions of the state. The state's position was also that this success of proceedings weren't appropriate in this case. But the state isn't allowed to bring forth contrary evidence at second stage, so it could not have done that. But the appellate court and the lower court rightly refused to sanction defendant's gamesmanship and properly held that neither the act nor this court's precedent required a court to conduct an evidentiary hearing on evidence that it knew to be false. They correctly found that the court could look to the related proceedings of a co-defendant to determine the legal sufficiency of the defendant's petition and accompanying documentation. And that is a very different thing than a credibility determination. Judge Lynn made a credibility determination in Aaron May's post-conviction proceeding. After seeing Gary Bingham testify to his recantation, he determined that that evidence, that testimony, was not reliable. In this case, that finding operated as a legal finding, that the very evidence that the defendant said he had that was new, that demonstrated his innocence, that evidence was unreliable. It was not trustworthy evidence. Could you address the question that at that other hearing, this defendant's lawyer was not present and had no opportunity to, in fact, question Bingham in any way? That's correct, Your Honor, but the defendant here is relying on that testimony as a thing. He is not saying that I might be able to get other evidence of my innocence if I get to question him. He's saying this testimony is evidence of my innocence, and this testimony is not evidence of his innocence because this testimony has been rejected. It has been found unreliable. So if the defendant had come forth with an affidavit from Gary Bingham explaining more, if he had provided more credible evidence, but first of all, it shouldn't be considered evidence of actual innocence. When this court created that very narrow new procedure in Washington, what it said is we need to create a new process because we have a situation which is not covered by the processes that we already have in place. We have in Washington a defendant who is not challenging the adjudicatory process by which he was convicted. He is saying, yes, I was convicted after a fair trial, but now I have evidence that the result of that trial wasn't reliable. And this court, when it created that actual innocence exception, said, that's not covered by 214.01. That's not covered by the Post-Conviction Hearing Act. It would be unconstitutional under our Constitution to have an innocent person convicted. We are going to create this new process. But the uncorroborated and almost fanciful recantation of Gary Bingham in this case goes to the heart of the adjudicatory process by which the defendant was convicted. Wasn't it not corroborated by the additional affidavit, the affidavit that was not presented in the other case? In DeRamis's, first of all, DeRamis's account of the events not only conflict with all of the other eyewitnesses from the trial, but it conflicts with Gary Bingham's own recantation. It corroborates it to the extent that she says he was the only one there. But it conflicts when she says, she talks about, and first of all, Judge, I think it requires a great leap of faith to assume on the basis of nothing more than an affidavit that Patricia DeRamis is, in fact, Deedee. There is no evidence. Isn't that why you should have a third stage hearing? And you bring the people in, and they say under oath whatever they're going to say, and the state can ask them whatever questions they want, and the defense lawyer can ask them whatever questions they want, and the judge will make a decision. Isn't that the whole purpose of a third stage hearing? That would be the purpose of a third stage hearing if the defendant had made a reasonable showing. But the defendant in this case has not shown anything that would establish that this evidence is newly discovered, that it could not have been discovered through the exercise of due diligence, or that it was so conclusive that it would probably change the result of trial. Deedee's affidavit says that the defendant came one time to the, that Bingham came one time to Donald Barfield's house and purchased cocaine, that he then left and he returned with a gun and white plastic baggies containing the cocaine. But Gary Bingham's own recantation talks about coming two times, and that was what he also testified at trial, and that's what Donald Barfield testified to, and that's what William Ramster testified to, that they came once and purchased rock cocaine, and then they engaged in the second transaction, and also Gary Bingham's recantation and his testimony says when he came back,  not white plastic baggies and with a scale. So this allegedly corroborating affidavit doesn't even really corroborate the recantation, and Gary Bingham doesn't say anything about going back and threatening everybody. So it really does not provide the type of corroboration that you would need at second stage to make a substantial showing of actual innocence. But what the defendant here is doing by presenting this recantation testimony as evidence of actual innocence is he is attempting to present a second claim of perjured testimony through post-conviction proceedings because he presented an initial claim that Gary Bingham perjured himself and he had an evidentiary hearing where Gary Bingham testified, and now under the guise of this very limited actual innocence exception, he's going to blow open the door, get to present a second claim of recanted testimony without establishing cause and prejudice, which is required for any procedurally defaulted claim, and without having to make any argument as to the state's knowing use of that testimony, which is required in post-conviction proceedings. He is abusing the very limited process that this court created in Washington for a purpose that it was not intended to. This should not be considered evidence of actual innocence. In addition, it is not new. Gary Bingham testified at the first successive evidentiary hearing in the post-conviction proceeding of this defendant and Aaron May. And at the time he testified, he had no Fifth Amendment privilege. He'd been convicted, his conviction was final, and he had waived any Fifth Amendment privilege by testifying against his two co-defendants. So all the defendant had to do was ask Gary Bingham, when he was on the stand testifying favorably for the defendant, didn't you really commit this crime by yourself? And Gary Bingham would have been compelled to answer. And yet the defendant didn't do that. And now he wants to be relieved of his failure to do his diligence. And he argues in his brief that he's shown diligence simply because there's no evidence of record that he could have obtained this evidence sooner, where you don't get to turn your burden on its head and say because the state didn't prove that I could have found it earlier, you have to assume that I'm diligent. It's his job to show diligence. It's his affirmative duty to show diligence. And there is not one factual allegation anywhere in that petition or in the testimony or in the affidavits that shows that he made any efforts whatsoever to discover this witness or discover this testimony. Nothing. That's not diligence. That is not what this court has expected of defendants trying to bring a third petition, post-conviction petition. The appellate court also properly found that the trial court was entitled or that the defendant was stopped, that the trial court was entitled to consider this finding that now made Gary Bingham's testimony insufficient as a matter of law to make any showing. And the court could properly consider that both because the defendant having asked the court to consider part of the proceeding was stopped from blocking the court's consideration of other parts of the proceeding. And the appellate court's holding was not predicated on collateral estoppel, and so the defendant's mutuality argument here is totally irrelevant. The court's position was predicated on equitable principles of estoppel, and the law is replete with examples of how this was proper. How is this equitable estoppel? This is in the vein, Your Honor, of the common law doctrines of curative admissibility, of completeness, and of Rule 106 under the Fourth, some evidence, and then block consideration of other related and highly relevant evidence because it's not favorable to his position. But it wasn't fact by fact by fact. It was the trial court's credibility determination that was at issue here, right? As far as the... I'm just trying to follow how equitable estoppel works as you're describing it. I mean, it usually would be there's been, as you say, completeness. Certain pieces of evidence are adduced, and then, therefore, other pieces of evidence can challenge that and can be brought in. But I'm not sure I understand how you're using that concept in this case where he's filed pleadings, the state has filed a motion to dismiss, and there doesn't seem to be any factual dispute here. In terms of the factual, I'm not sure I understand what you mean that there doesn't seem to be a factual dispute here. Well, we're talking about a motion to dismiss, correct? Correct. But there is a dispute as to whether or not this qualifies as new evidence. There is dispute as to whether or not this is entitled to the presumption of truth. There is a... Could you respond to that? Many of the cases do say at the second stage when the court is making a determination based on paper alone, generally in most cases, certainly we see it in civil cases all the time, that at that point the whole idea of a motion to dismiss is to assume the facts are true, and if true, whether or not they say cause of action or whatever the issue would be. Does that not apply here? No, Your Honor, it doesn't under the terms of this court's opinion in Coleman. In Coleman, this court specifically stated that a court must assume the truth of all well-pled factual allegations that are not affirmatively rebutted by the record. And the Coleman rule recognizes and accords the proper deference to facts found at trial. And those facts have been filtered through a host of truth-seeking measures designed to fund, to help the trial achieve its main purpose, which is to find the truth. And so all of this trial evidence goes through discovery and investigation and confrontation through cross-examination, the presentation of alternative evidence, observing the witness's demeanor. And at the end of that, after it's been survived the crucible of all those things, the trier of fact determines what the facts are. And having survived all of those truth-seeking measures, a presumption of reliability has to attach. That is the fundamental principle of our criminal justice system. So in Coleman, this court recognized that where the record of the trial affirmatively rebuts the allegations of a petition, it is not, the defendants have this new evidence on parity with evidence that has undergone all these truth-seeking measures. And so Coleman said, you don't have to. Well, Gary Bingham's absolutely fanciful recantation is affirmatively rebutted by multiple facts of record. Not only the defendant's, his own detailed testimony, but the testimony, but his handwritten confession, which contrary to the defendant's reply brief, is part of the record and can be considered by this court. And that confession does not say anything about him acting alone. It is affirmatively rebutted by the testimony of Donald Barfield, whose house this drug transaction and the kidnapping occurred from. And he specifically names the defendant, Aaron May, and Gary Bingham, as having been present. And it is contradicted by the testimony of William Ramser. Now, William Ramser tried to move away from his identification of defendant as being involved. He said he didn't recognize anybody in the courtroom, but there was testimony brought in that he had viewed a lineup and that he identified the defendant as one of the three people. It conflicts with Cheryl Lathan's testimony. It conflicts with the medical examiner's. Is that the basis of the trial court's ruling here? Are any of those facts the basis of the trial court's ruling here? The trial court here held that the defendant hadn't made a substantial showing of actual innocence. And all of those facts are operative. But didn't he not say that he didn't believe Barfield, whatever his name is, because of the other case? Wasn't that the basis of the trial court ruling? His ruling was, yes. Your Honor, before my time runs out, I would just like to make one final point. All of these same factors demonstrate that the appellate court's holding and the trial court's holding can also be affirmed on the basis that these successive proceedings were improvidently granted. Because the court wrongly thought it had to grant leave to file a successive petition under the gist standard, which this court rejected in Edwards. And because it applied the gist standard and because this evidence isn't new, because it could have been discovered sooner, because it isn't evidence of actual innocence, and because it is not so conclusive that it was a retrial, then there was not a colorable claim of actual innocence presented here. And this court in Szabo has held that even where something goes to an evidentiary hearing, it can go back and question whether successive proceedings were improvidently granted. And that is also a basis. So for all of these many reasons, the people respectfully request this court to affirm the appellate court's holding. I have one question with regard to your reference to selected excerpts being placed on record in this case. Are you claiming that the trial judge, had it been a different one, could have gone back and looked at the entire transcript, which would include that judge's finding of non-credibility? So are you claiming he's submitting non-credible transcript? No, Your Honor. I believe that under this court's well-established principles of judicial notice, even a judge that did not hear the former proceeding would be entitled, because judicial notice allows a court to take notice of matters in other cases in the same court when those matters entail as substantially the same parties, and when the other proceeding is determinative of this proceeding, and so it would be wholly proper. The situation of co-defendants having separate evidentiary hearings happens all the time, and there is no simultaneous post-conviction proceedings. There is no reason for those things to be litigated. This is especially true in a case like this, where this is the defendant's third post-conviction petition. And regardless of how his attorney cross-examined or direct-examined Gary Bingham, it couldn't change the fact that the hard evidence contradicted. Gary Bingham said he shot the victim one time, and the medical examiner established that the victim had been shot twice. So it contradicted everything. I see that my time is up. If the court would give me one minute of an indulgence, I would like to say this will probably be my last argument before you, and it has been an honor and a privilege to be here, so thank you. Thank you very much. This court would not sanction the conviction of a defendant who had not been represented at the trial at which he was convicted, simply because of the fact that a co-defendant had been represented at that trial and convicted there, and the evidence would also support the conviction of the other defendant. This court should not sanction what the state is requesting here, either. The state is accusing Mr. Sanders of engaging in gamesmanship, but the state has no evidence, other than its own speculation, that he could have obtained either of these pieces of newly discovered evidence prior to the time that he did and presented them, nor would it even make sense for him to do so. The state also makes much of the supposed difference between Doremus' affidavit and Bingham's recantation, but the only difference that they've identified is the packaging on the drugs, the way that it was described by the two different witnesses. In contrast to that, the evidence that the state touts as being so overwhelming of Mr. Sanders' guilt is, in fact, far from that. The two state's witnesses who identified Mr. Sanders as being present, Barfield and Bingham, their testimony diverged on much more significant grounds than the descriptions of the packaging of the drugs involved. Donald Barfield indicated that McLean Sanders had come to the House early in the day and participated in these drug deals that preceded these events. Gary Bingham's testimony was that McLean Sanders was not involved in these drug deals and only came to the scene later. The state also indicates that because there's this remaining evidence, the trial testimony of Barfield and Bingham, that this renders Doremus' affidavit and Bingham's recantation unlikely to change the result on retrial. That's inconsistent with what this court, for example, has decided in Coleman, where there was a recantation that was advanced to an  So, in fact, there's still four witnesses. Counsel, why would it have not made sense to ask Bingham whether he alone shot the victim? Earlier you said that it wouldn't have made sense for the defendant to try to acquire that testimony. Why would that have not made sense? It would have made sense for him to try to obtain that if he had any reason to think that he might obtain it. But, in fact, that was an evidentiary hearing not on that allegation, but on the allegations of an affidavit that did not get into that at all. So Mr. Sanders had no way. The affidavit pertained to the deal by which Bingham was testifying to it had nothing to do with the actual events of the case. And so Mr. Sanders had no way of knowing that Bingham would eventually be willing to recant. Likewise, Sanders had no way of knowing that Doremus would be willing to come forward. And, in fact, her affidavit, which must be taken as true, indicates that she would not have been willing to come forward before due to the fear that she was living under having been threatened by the admitted murderer in this case, Gary Bingham. For these reasons and those advanced in the briefs, Mr. Sanders requests that this case be advanced to an evidentiary hearing. Thank you. Thank you. Case number 118123, People of the State of Illinois v. McLean-Sanders, will be taken under advisement as agenda number six. Mr. Marshall, the Supreme Court will take a ten-minute recess. Thank you very much, Mr. Gentry and Ms. Grimaldi-Stein, for your arguments this morning. And if we don't see you again, the best to you. You're both.